## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

TRAVIS CLEMONS,

      Petitioner,

v.                                                            Case No. 4:20-cv-73-TKW-MJF

RICKY D. DIXON,[1]

      Respondent.

_____/

## ORDER and
## REPORT AND RECOMMENDATION

Petitioner Travis Clemons has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. Doc. 1. Respondent ("the State") answered, providing relevant portions of the state court record. Doc. 9. Clemons replied. Doc. 18. The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Clemons is not entitled to habeas relief.[2]

---

[1] Ricky D. Dixon succeeded Mark S. Inch as Secretary of the Florida Department of Corrections, and is automatically substituted as the Respondent. *See* Fed. R. Civ. P. 25(d).

[2] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

## I. Background Facts and Procedural History

On June 17, 2010, Clemons, while confined at the Leon County Jail on unrelated charges, attacked another inmate (Thomas L. Williams) with a deadly weapon.[3] In Leon County Circuit Court Case No. 2010-CF-1899, Clemons was charged with Aggravated Battery With a Deadly Weapon. Doc. 9, Ex. 1.[4] Clemons was tried on December 8, 2011. Exs. 2-16 (Trial Tr.), Ex. 17 (Trial Exs.).

The victim, Williams, testified that Clemons became his cellmate on June 17, 2010. Clemons was placed in the cell with Williams a short time after noon. Clemons was agitated when he arrived at the cell and, after seeing a picture of Williams's girlfriend in the cell, began "cussing and carrying on." Ex. 3 at 29. Clemons "got worser and worser," so Williams summoned a guard using the call-box in the cell (a type of intercom). *Id*. at 29-30. Officer Kevin Johnson responded to the call. Johnson unlocked the cell door, but before he was able to enter the cell, Clemons left the cell. Williams asked Officer Johnson if he or Clemons could be moved to a different cell.

---

[3] The facts are drawn from the evidence presented at trial, viewed in the light most favorable to the State. *See Jackson v. Virginia*, 443 U.S. 307 (1979); *see also* Doc. 9, Exs. 2-16 (Trial Tr.), Ex. 17 (Trial Exs.).

[4] Citations to the state-court record are to the electronically-filed exhibits attached to the State's answer. Doc. 9. The citation references the exhibit number followed by the relevant page number. When a page of an exhibit bears more than one page number, the court cites the number appearing at the bottom right corner of the page (as assigned by the Respondent).

While Williams and Johnson were conversing, Clemons re-entered the cell and told Johnson that everything was ok, along with something to the effect that "this is not a Holiday Inn. If you don't like one room, you can't go to another, you know." Williams told Johnson that everything was not ok and that he wanted to be moved. Johnson told Williams to fill out an inmate request form, and left the cell.

Approximately 20-30 minutes later, the cell doors were opened and inmates were allowed to move about the common area of the pod. Williams left the cell, went to the common area, and sat down at a table to play Dominoes with other inmates. Clemons also left the cell.

Williams saw Clemons nearby talking to other inmates and looking at him. Williams got up from the Dominoes table, approached the Officers Station and informed Officer Johnson, "I got a bad vibe about this guy." Ex. 3 at 32. Williams again asked Johnson to move him or Clemons to a different pod. Johnson told Williams that he would take care of the matter before his shift ended.

Williams returned to the Dominoes table and resumed playing. Clemons approached Williams from behind and began stabbing him in the face with a toothbrush that had been sharpened into a weapon. Williams did not see Clemons approach him, because he was looking down at the Dominoes table. After he was stabbed, Williams began bleeding profusely, reached behind his chair, and grabbed

Clemons. The two scuffled until they were separated by Johnson. Williams was taken to the medical department. When he returned to his cell, Williams observed that the picture of his girlfriend had been torn up. Ex. 3 at 28-46; Ex. 4 at 47-59. The torn picture was entered into evidence. Ex. 17.

Officer Johnson corroborated Williams's version of events—including Williams calling him to the cell and requesting that he and Clemons be separated; Williams approaching him again at the Officers Station and expressing concern about Clemons; and Williams's and Clemons's movements in the moments leading up to the attack. Johnson described that at approximately 12:50 p.m., the legal mail arrived and he approached the sliding window to take the mail from the attendant. Johnson was only 15 feet away from Clemons, who was sitting at a table with three friends. Johnson had an unobstructed view of the incident. Johnson saw all three of Clemons's friends get up from the table and leave. Clemons then got up and approached Williams while Williams was sitting at the Dominoes table. No one at the Dominoes table was looking at Clemons. Clemons looked at Johnson and then continued walking toward Williams. When Clemons reached Williams, he "started swinging" and striking Williams in the face. Ex. 4 at 66-67; Ex. 5 at 74. Williams had not done anything threatening to Clemons, nor had he said anything to Clemons. According to Johnson, Williams "was just sitting there playing Dominoes," Ex. 4 at

67, and Clemons unequivocally was the aggressor. Ex. 5 at 88. As soon as Johnson saw Clemons strike Williams and the two men begin to scuffle, he immediately moved to break up the fight. By the time Johnson reached Clemons and Williams, Clemons was on the floor and Williams had his hands around Clemons's neck. Johnson initially thought Clemons had only been punching Williams with his fist, but after separating the two inmates, Johnson saw Williams reach into his mouth and remove a two-inch sharp object which turned out to be part of a toothbrush that had been sharpened. Johnson had not seen the weapon in Clemons's or Williams's hand before or during the attack. Johnson ordered all inmates to return to their cells for lock down while he attended to Williams until other officers arrived. Clemons walked back to his and Williams's cell. Ex. 4 at 59-68; Ex. 5 at 69-91; Ex. 6 at 92-93.

The doctor who treated Williams testified that Williams's injury was caused by the sharpened end of the toothbrush handle being pushed through Williams's lip all the way through the side of his face and into his mouth where it came to rest under his tongue. Williams required several stitches. The doctor opined that a great deal of force was required to accomplish that kind of damage. Ex. 6 at 93-99.

Clemons's theory of defense was self-defense. Clemons testified that prior to the incident, Williams and his friends had been taunting Clemons and making sexual

gestures toward him. Clemons testified that at one point, Williams and two other inmates forced him into his cell with Williams and locked the door. Clemons testified that Williams exposed himself and then choked Clemons until he passed out. According to Clemons, when he came to, his underwear had been pulled down. Williams then pushed Clemons out of the cell. Clemons testified that he went and sat by himself in the common area and cried. Other inmates came over, but Clemons did not tell them what had happened. Clemons acknowledged that he approached Williams at the Dominoes table, but Clemons testified that he "was going to ask him – or planned to ask him what happened and what did he do." Ex. 7 at 124. Clemons testified that when he approached Williams from behind:

> [Williams] made like a flinch towards me. But I didn't know that it wasn't sincere until after I had done hit him like two times and I moved back.
>
>        . . . .
>
> [And a]t the same motion of me moving back, he was coming from out of his chair. And in the right, I think, pocket [Williams] pulled out the toothbrush. When he pulled out the toothbrush, I just seen him come towards me real fast and he swung at me.

Ex. 7 at 125-27. Clemons maintained that during the commotion, he and Williams fell to the floor and Williams ended up stabbing himself with the sharpened toothbrush. *Id*. at 133.

The jury found Clemons guilty as charged. Ex. 18 at 1 (Verdict). The trial court adjudicated Clemons guilty and sentenced him to 15 years of imprisonment. *Id*. at 5-13 (Judgment). The First DCA affirmed the judgment on December 20, 2012, *per curiam* and without written opinion. *Clemons v. State*, 103 So. 3d 146 (Fla. 1st DCA Dec. 20, 2012) (Table) (copy at Ex. 21).

On November 12, 2013, Clemons filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, which he later amended. Ex. 23 (Am. Mot. for Postconviction Relief). Clemons's amended Rule 3.850 motion raised ten grounds of ineffective assistance of trial counsel. Ex. 23. The state circuit court summarily denied Grounds 1, 6 and 7, and set Grounds 2, 3, 4, 5, 8, 9 and 10 for an evidentiary hearing. Ex. 25.

After an evidentiary hearing where Clemons was assisted by counsel, the state circuit court denied relief on Grounds 2, 3, 4, 5, 8, 9 and 10. *See* Exs. 26-27 (Evidentiary Hr'g Tr.); Ex. 28 (Order). Clemons appealed. Ex. 30 (Initial Br.). The First DCA affirmed *per curiam* and without written opinion. *Clemons v. State*, 284 So. 3d 423 (Fla. 1st DCA June 28, 2019) (copy at Ex. 35). The mandate issued November 22, 2019. *Id*.

Clemons filed his *pro se* federal habeas petition on February 5, 2020. Doc. 1. Clemons claims that his trial counsel rendered ineffective assistance in two ways:

(1) by failing to impeach Williams with certified copies of three prior felony convictions; and (2) by failing to impeach Williams by questioning him about his prior convictions for "crimes of violence." *Id.* at 6-11. Clemons asserts that he exhausted both of these claims by presenting them in his Rule 3.850 motion and appeal. *Id.* at 7-8, 10-11.

The State asserts that Clemons is not entitled to habeas relief because his first claim is procedurally defaulted and both claims lack merit. Doc. 9 at 2, 27-33.

Clemons's reply does not address the procedural default defense. Doc. 18. Clemons argues that he is entitled to habeas relief because the state court's decision involved an unreasonable application of the *Strickland v. Washington*, 466 U.S. 688 (1984) standard. Doc. 18.

## II.  RELEVANT LEGAL PRINCIPLES

### A.  Federal Habeas Exhaustion Requirement

Before seeking federal habeas relief under § 2254, the petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). "To satisfy the exhaustion requirement, the petitioner must have fairly presented the substance of

his federal claim" to the state's highest court, either on direct appeal or on collateral review. *Picard*, 404 U.S. at 277-78; *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").

A petitioner "fairly" presents the substance of his federal claim when he describes the claim "such that [the state courts] are permitted the 'opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.'" *Kelley v. Sec'y Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004) (quoting *Picard*, 404 U.S. at 277); *French v. Warden, Wilcox State Prison*, 790 F.3d 1259, 1270-71 (11th Cir. 2015) (reaffirming that a habeas petitioner must "present his claims to the state court 'such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation.'" (quoting *Kelley*, 377 F.3d at 1344-45)).

When a petitioner fails to exhaust his claim and the state court remedy is no longer available, that failure to exhaust is a procedural default. *O'Sullivan*, 526 U.S. at 839-40; *see also Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999) (holding that when a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim now would be procedurally barred under state law, the claim is procedurally defaulted). A petitioner seeking to overcome a

procedural default must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[ ] will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

**B.    Section 2254 Standard of Review**

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[5] Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

---

[5] Unless otherwise noted, references to Supreme Court's *Williams* case are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law. The adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean

the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and

convincing evidence.'" *Landrigan*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has emphasized often that a state prisoner's burden under § 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S. at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, <u>a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.</u>

*Richter*, 562 U.S. at 102-03 (emphasis added).

A federal court may conduct an independent review of the merits of a petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, the writ will not issue

unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

## C.    Federal Law Governing Claims of Ineffective Assistance of Counsel

The Supreme Court follows a two-pronged test for evaluating claims of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). The petitioner must show (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. *See id.* at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.' Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (quoting *Strickland*, 466 U.S. at 694).

The inquiry under *Strickland*'s performance prong is "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. The burden to overcome that presumption and to show that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different trial outcome. *See Strickland*, 466 U.S. at 694. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105 (citations omitted). The Supreme Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

### III. DISCUSSION

**Ground One**   **"COUNSEL WAS INEFFECTIVE FOR FAILING TO IMPEACH THE VICTIM WITH CERTIFIED COPIES OF HIS PRIOR FELONY CONVICTIONS (As raised in Ground Three of Motion for Post Conviction Relief)." Doc. 1 at 6.**

Clemons alleges that at trial, Williams testified that he had only three prior felony convictions, when in fact he had six. Doc. 1 at 6. Clemons claims that trial counsel was ineffective for failing to discover that Williams had more felony convictions than he admitted, and for failing to impeach Williams with certified copies of the felony convictions. *Id*. at 6-7. The three prior felony convictions that Williams did not disclose were his 2010 convictions for Aggravated Assault With a Firearm; False Imprisonment; and Possession of a Firearm by a Convicted Felon. *See* Ex. 26 at 22. Clemons asserts that he presented this claim to the state courts in Ground Three of his amended Rule 3.850 motion. Doc. 1 at 6.

For context, under Florida law, a party may attack the credibility of any witness with evidence that he has been convicted of a felony or a crime that involved dishonesty or a false statement. *Stallworth v. State*, 53 So. 3d 1163, 1165 (Fla. 1st DCA 2011). The witness may be asked whether he has ever been convicted of such a crime and, if so, how many times. *Id*. "The questioning is limited to determining

if the witness has previously been convicted of a crime, and if so, how many times." *Sneed v. State*, 397 So. 2d 931, 933 (Fla. 5th DCA 1981).

If the witness responds truthfully, the questions about his criminal history must cease, but if he denies the number of convictions, a certified record of the convictions may be entered into evidence, but only to determine the number of convictions. *Fulton v. State*, 335 So. 2d 280, 284 (Fla. 1976) ("If the witness denies ever having been convicted, or misstates the number of previous convictions, counsel may impeach the witness by producing a record of past convictions. Even if a witness denies a prior conviction, the specific offense is identified only incidentally when the record of the conviction is entered into evidence.").

The State asserts that Clemons procedurally defaulted this claim because he abandoned it in his postconviction appeal by not including it in his initial brief. Doc. 9 at 2, 19, 27. Alternatively, the State argues that even assuming to Clemons's benefit that he fully and properly exhausted this claim, he is not entitled to habeas relief because the state court's rejection of the claim involved a reasonable application of the *Strickland* standard. Doc. 9 at 28-29.

This court does not need to decide the procedural default issue, because even assuming to Clemons's benefit that he fairly presented this claim to the First DCA in his postconviction appeal, he is not entitled to habeas relief.

A.      **State Court's Decision**

Clemons presented this claim to the state circuit court as Ground 3 of his

amended Rule 3.850 motion. Ex. 23 at 42-45. The state circuit court identified the

two-pronged *Strickland* standard as the controlling legal standard, Ex. 28 at 176-77,

and denied relief for the following reasons:

> 7.      Defendant claims that counsel was ineffective for failing
> to impeach the victim with certified copies of his September 15, 2010
> felony convictions. At the hearing, counsel admitted that he was
> unaware that the victim's pending case had resolved, and that the victim
> had a total of 6 felony convictions as opposed to the 3 that the victim
> admitted to on the stand. Had he known, counsel testified that he would
> have used the offenses to impeach the victim. Counsel agreed at trial
> with the State's assessment that the victim had 3 prior felony
> convictions and that is what the victim would admit to on the stand.

> 8.      Trial counsel failed to investigate and confirm victim's
> prior convictions. This is not a difficult process, and defense counsel
> cannot just take the word of the State without confirmation of previous
> convictions. Counsel was ineffective for failing to research and
> investigate the prior convictions of the victim, especially when the jury
> had to make a credibility determination between the story of the victim
> and the story of the defendant.

> 9.      However, Defendant suffered no prejudice. The State and
> defense counsel discussed the number of felonies for the victim.
> Certainly, if these additional felonies were brought to the attention of
> the State or Defendant's trial counsel, they would have been added to
> the admitted total by the victim. This would not have changed the
> outcome of the case, especially given the fact that there was a third
> party eyewitness, Corrections Officer Johnson, who testified that
> defendant punched the victim first and was the aggressor. Even if the
> victim denied additional felony convictions, and was confronted with
> the certified judgments and sentences in front of the jury, this would

not have been so prejudicial as to lead to a different result. The past crimes were different and unrelated to the charged events of the trial, and given the independent eyewitness testimony of Corrections Officer Johnson, there is no reasonable probability that the outcome would have been different.

Ex. 28 at 178-79. The First DCA summarily affirmed without explanation. Ex. 35.

### B.   Clemons's Claim Does Not Warrant Habeas Relief

Assuming to Clemons's benefit that he fairly presented this claim to the First DCA in his postconviction appeal, the First DCA's summary affirmance is considered an "adjudication on the merits" of the claim and, therefore, is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary); *id*. at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

Where, as here, there has been one reasoned state judgment rejecting a federal claim followed by a later unexplained order upholding that judgment, federal courts employ the following "look through" presumption: "[T]he federal court should 'look through' the unexplained decision to the last related state-court decision that does

provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, — U.S. —, 138 S. Ct. 1188, 1192 (2018). Consistent with *Wilson*, this court presumes that the First DCA rejected Clemons's claim for the reasons provided by the state circuit court.

    The state court's decision is not "contrary to" clearly established Federal law, because the state court identified and applied the two-part *Strickland* standard. *See Williams*, 529 U.S. at 405-06 (interpreting § 2254(d)(1)). To obtain habeas relief, therefore, Clemons must show that the state court's application of the *Strickland* standard was unreasonable.

    In reviewing the state court's decision, this court defers to the state court's factual findings, because they are amply supported by the record and because Clemons has not rebutted them with clear and convincing evidence to the contrary. *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) ("AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence.") (citing 28 U.S.C. § 2254(e)).

    Clemons argues that the state court's prejudice determination was unreasonable because his case was a "credibility contest" between him and Williams, and the evidence of the additional felonies would have impeached

Williams's credibility. Doc. 1 at 7. As the state court emphasized, however, although Williams's and Clemons's credibility was at issue, there was a third and independent eyewitness—Officer Johnson—who described the incident to the jury. Johnson's testimony is detailed above. Johnson's testimony corroborated Williams's version of events, including: (1) that Clemons was the aggressor; (2) that Clemons snuck up on Williams and started striking him in the face; (3) that Williams was playing Dominoes and looking down at the table when Clemons attacked him; and (4) that Williams had not made any threatening movements toward Clemons or said anything to Clemons before the attack. Johnson also corroborated Williams's testimony that prior to Clemons's attack, Williams twice complained about Clemons's behavior toward him. Ex. 4 at 64; Ex. 5 at 69-70. Johnson's testimony also undermined Clemons's description of events—that Williams made a motion toward Clemons just before Clemons struck him.

Fairminded jurists could concur in the state court's conclusion that Clemons failed to satisfy *Strickland*'s prejudice prong. Impeaching Williams would not have changed the jury's view of the credibility of Johnson's testimony, who was an independent eyewitness. Given the totality of the evidence against Clemons, the likelihood of a different outcome had counsel impeached Williams with the

additional felony convictions is not substantial. *Richter*, 562 U.S. at 112 ("The likelihood of a different result must be substantial, not just conceivable.").

The state court's rejection of Clemons's claim was not contrary to and did not involve an unreasonable application of the *Strickland* standard. Clemons is not entitled to habeas relief on Ground One.

**Ground Two**      **"TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO IMPEACH THE VICTIM WITH EVIDENCE OF HIS PRIOR CONVICTIONS FOR CRIMES OF VIOLENCE (As raised in Ground Four of Motion for Post Conviction Relief)." Doc. 1 at 8.**

Clemons alleges that at trial, Williams testified that he was an easy-going person:

> Q [Defense Counsel]   You basically testified that the interaction between you and Mr. Clemons was – but was kind of one-sided, that basically he was causing all the trouble and you weren't causing any trouble at all?
>
> A [Williams]  Evidently that's how I look at that. It [sic] wasn't causing trouble, you know. He brought the trouble in the cell. Something was bothering him before he come in the cell.
>
> Q  At any point did you get angry and respond to that?
>
> A  No, sir.
>
> Q  Or ask by threatening Mr. Clemons?
>
> A  No, sir. I'm not that type of guy, sir. Just because—don't—don't overlook the situation just because I'm big I'm a bully or something like that. I never been—I'm an easy going guy. I get along with any and

> everybody. I don't let size, you know, take advantage of other peoples.
> I know how to treat people and I expect the same in return

Doc. 1 at 8; Doc. 18 at 10 n.1 (quoting above portion of trial transcript); Doc. 9, Ex. 4 at 53-54 (Trial Tr.).

Clemons argues that Williams's testimony "opened the door" to trial counsel introducing evidence of Williams's prior convictions for "crimes of violence," namely Williams's felony convictions for aggravated assault with a firearm, and false imprisonment. Doc. 1 at 8-9; Doc. 18 at 8. Clemons asserts that although his Rule 3.850 motion argued that counsel should have introduced evidence of Williams's prior convictions for sexual offenses, he also presented evidence at the evidentiary hearing that counsel should have introduced evidence of Williams's prior convictions for the aggravated assault and false imprisonment. Doc. 18 at 8-10. Clemons emphasizes that he is not claiming that the evidence was admissible to establish a propensity or reputation for violence, but rather to impeach Williams's credibility "under the 'opened door' principle." *Id*. at 13 n.2 (citing *Rodriguez v. State*, 753 So. 2d 29 (Fla. 2000)).

The parties agree that Clemons presented this claim to the state courts in his Rule 3.850 proceeding and postconviction appeal. Doc. 1 at 10-11; Doc. 9 at 2, 27. The State asserts that Clemons is not entitled to habeas relief because he fails to satisfy § 2254(d)'s demanding standard.

Page 23 of 29

## A.    State Court's Decision

Clemons presented this claim to the state circuit court as Ground 4 of his amended Rule 3.850 motion. Ex. 23 at 45-48. The state circuit court identified the two-pronged *Strickland* standard as the controlling legal standard, Ex. 28 at 176-77, and denied relief for the following reasons:

> 9.    Defendant claims that counsel was ineffective for failing to impeach the victim with questions about prior felony offenses of a sexual nature. Counsel testified that he could not impeach the victim with the specific facts of these sexual felonies because they were not relevant. Trial counsel was not ineffective for not attempting to impeach the victim with the facts of these prior sexual offenses. The victim admitted to the felonies when asked by the State, and with his admission, defense counsel cannot confront the victim with certified copies of the judgments and sentences. Additionally, any testimony concerning the facts of these prior sexual cases was not relevant or admissible. Thus, defense counsel was not ineffective for failing to attempt to present it.

> 10.    Even if trial counsel had been able to get this testimony into evidence, it would have made no difference in the outcome of the case. The nature of the victim's sexual cases were very different from the facts alleged in this case, and given the independent eyewitness testimony of Corrections Officer Johnson, there is no reasonable probability that the result would have been different.

Ex. 28 at 179. The First DCA summarily affirmed without explanation. Ex. 35.

## B.    Clemons's Claim Does Not Warrant Habeas Relief

The First DCA's summary affirmance is an "adjudication on the merits" of Clemons's claim, and is reviewed under § 2254(d)'s deferential standard. *See*

*Richter*, 562 U.S. at 99, 100. Consistent with *Wilson, supra*, this court "look[s] through" the First DCA's unexplained decision to the circuit court's order denying postconviction relief, and presumes that the First DCA adopted the same reasoning. *Wilson*, 138 S. Ct. at 1192.

The state court's decision is not "contrary to" clearly established Federal law, because the state court identified and applied the two-part *Strickland* standard. *See Williams*, 529 U.S. at 405-06 (interpreting § 2254(d)(1)). To obtain habeas relief, therefore, Clemons must show that the state court's application of the *Strickland* standard was unreasonable.

Clemons argues that the state court's decision was unreasonable because it discussed only the evidence of Williams's prior convictions for sexual offenses and did not address his prior convictions for aggravated assault and false imprisonment. Doc. 1 at 10. Clemons argues that evidence of the aggravated assault and the false imprisonment was admissible, because Williams's statement that he was easy going and not a bully "opened the door" to counsel "impeaching" that testimony with details about the prior assault and false imprisonment. Doc. 18 at 13-14. Clemons maintains that had counsel questioned Williams about these prior crimes, the jury would have believed that Williams was the aggressor and that Clemons acted in self-defense. Clemons explains:

Petitioner's defense at trial was that he punched victim in self defense once victim made a startling movement toward Petitioner and that the victim is the one that had the weapon that caused the victim's injury. Evidence that the victim had previously been convicted of aggravated assault with a firearm and false imprisonment would have established that he had a propensity for violence involving weapons.

Doc. 1 at 10.

This court does not need to analyze whether state law would have allowed counsel to question Williams about the details of his prior convictions for aggravated assault and false imprisonment. The reason is that Clemons still faces—and fails to overcome—the hurdle he faced in Ground One. To warrant habeas relief, Clemons must establish that he was prejudiced by the absence of the impeachment evidence against Williams. Clemons has not made that showing. While it is conceivable that the result of the proceeding would have been different had counsel introduced the impeachment evidence against Williams, Clemons has not established that the likelihood of a different result was "substantial" given that Officer Johnson—an independent eyewitness—corroborated Williams's version of events and discredited Clemons's version of the attack. *Richter*, 562 U.S. at 112.

The state court's rejection of Clemons's claim was not contrary to and did not involve an unreasonable application of the *Strickland* standard. Clemons is not entitled to habeas relief on Ground Two.

## IV.  CERTIFICATE OF APPEALABILITY IS NOT WARRANTED

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. —, 137 S. Ct. 759, 774 (2017) (quoting *Miller-El*, 537 U.S. at 327). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should

issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## V.  CONCLUSION

It is **ORDERED** that: The clerk of court shall change the docket to reflect that Ricky D. Dixon has been substituted as the Respondent in this action.

In addition, for the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.  The petition for writ of habeas corpus, Doc. 1, challenging the judgment of conviction and sentence in *State of Florida v. Travis Clemons*, Leon County Circuit Court Case No. 2010-CF-1899, be **DENIED**.

2.  The District Court **DENY** a certificate of appealability.

3.  The clerk of court close this case file.

At Pensacola, Florida, this 26th day of January, 2022.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not**

**control. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**